**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
**(973) 645-6340**

**WILLIAM J. MARTINI**
          **JUDGE**

**LETTER OPINION**

December 30, 2005

Jill Anne LaZare, Esq.
Law Offices of Jill Anne LaZare, LLC
51 JFK Parkway
First Floor West
Short Hills, NJ 07078
*Attorney for Plaintiff*

Jordan B. DeFlora, Esq.
Two University Plaza
Suite 402
Hackensack, NJ 07601
*Attorney for Defendant*


**Re:   Professional Cleaning and Innovative Building Services, Inc. v.
        Kennedy Funding, Inc.
        Docket No. 05-CV-2384 (WJM)**

Dear Counsel:

     This matter comes before the Court on Plaintiff Professional Cleaning and Innovative Building Services, Inc.'s ("Professional's") appeal of Magistrate Judge Hedges' September 27, 2005 decision to deny Professional's motion to reconsider the August 29, 2005 denial of its motion to file an amended complaint. This Court heard oral arguments on December 24, 2005. For the reasons stated below, Magistrate Judge Hedges' decision is **AFFIRMED.**

**A.   Background**
     This is a diversity action originally brought in May 2005 under the New Jersey Consumer Fraud Act ("CFA") and common law claims of unconscionability, breach of good faith and fair

dealing, and breach of contract. A complete recitation of the facts is unnecessary given this Court's detailed treatment of them in its Letter Opinion of August 11, 2005. In sum, Professional sought funding from Kennedy in the amount of $1,800,000 to purchase property. Kennedy agreed to provide a loan commitment in return for a fee. Under the terms of the commitment , Kennedy would provide Professional with a loan for 60% of the "as is" market value of the property, but would provide no more than $1,800,000.

Initially, one of Kennedy's appraisers valued the property at $2,610,000. However, to calculate the as is value of the property, the appraised value was reduced by 20% to $2,088,000. As such, the value of the property for purposes of calculating the loan fell short of the $1,800,000 Professional needed.

The parties then found a third party appraiser, who valued the property at $3,040,000. When reduced to as is value, the approved loan still fell short of the $1,800,000 Professional needed. Professional eventually sought funding elsewhere and filed suit seeking the return of all fees paid as well as treble damages, which are allowed under the CFA.

Because the contract between the parties explicitly limited damages stemming from breaches of the contract to the commitment fee of $54,000, in order for Professional to recover in excess of the jurisdictional amount of $75,000 to establish diversity jurisdiction, it needed to allege a cause of action that would allow recovery sufficient to meet the jurisdictional requirement. The only alleged cause of action that allowed such recovery was Professional's claim under the CFA, through which a plaintiff may recover treble damages. N.J.S.A. § 56:8-19. This Court found, however, that Professional had failed to plead a cause of action under this statute.

Under the CFA, Professional first had to allege "unlawful conduct" by Kennedy. *See Dabush v. Mercedes Benz*, 874 A.2d 1110, 1116 (N.J. Super. Ct. App. Div. 2005). This term is defined as the "use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise." N.J.S.A. § 56:8-2. This Court held that Professional had not made a sufficient showing of any unlawful conduct, finding that the contract, which was executed between two commercial entities, was clear, unambiguous, and laid out clearly the terms of the loan. (*Id.*) Professional did not allege any failure on the part of Kennedy to abide by the terms of the contract, and thus failed to allege any unlawful conduct.

On August 24, 2005, Professional filed a motion to vacate the dismissal and amend the complaint. Magistrate Judge Hedges denied the motion on the grounds that it was untimely. Professional then filed a timely motion for reconsideration on September 9, 2005, which Magistrate Hedges also denied. On October 11, 2005, Professional timely filed this appeal of Magistrate Hedges' denial of the motion to reconsider the denial of the motion to amend.

**B. Motion to Reconsider**

Professional argues that Magistrate Hedges erred in denying its motion to reconsider the denial of its motion to amend. In denying this motion, Magistrate Hedges ruled that Rule 59(e), pursuant to which Professional requested vacatur of the original dismissal, was not the

"appropriate vehicle" for Professional to "reallege jurisdictional facts" after dismissal of the complaint. (Sept. 27, 2005 Order.)

A district court may reverse a Magistrate Judge's order if it finds the ruling clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A). The district court is bound by the clearly erroneous rule as to findings of fact, while the phrase "contrary to law" indicates plenary review as to matters of law. *Haines v. Liggett Group Inc.*, 975 F.2d 81, 91 (3d Cir. 1992). According to the Supreme Court, "a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

Typically, motions to alter judgments under Rule 59(e) will not be granted unless the movant demonstrates some manifest error in fact or law or newly discovered evidence warranting amendment or vacatur of the judgment. *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 908 (3d Cir. 1985). However, when a Rule 59(e) motion is tied to a Rule 15 motion to amend a complaint, the more liberal standards of Rule 15 govern, such that the motion to amend should be granted unless the court finds undue delay, bad faith, dilatory motive, prejudice, or that an amendment would be futile. *See In re Adams Golf*, 381 F.3d 267, 280 (3d Cir. 2004); *Cureton v. NCAA*, 252 F.3d 267, 272-273 (3d Cir. 2001). Under this standard, this Court agrees that Magistrate Hedges' decision denying Professional's motion to reconsider was contrary to applicable law. However, this Court affirms Magistrate Hedges' decision on the alternative ground that granting Professional leave to file the amended complaint would be futile, for the reasons stated below.

## C. Unlawful Conduct and Fraud

In the proposed amendment, Professional avers essentially the same allegations as in the original complaint but has added a claim of common law fraud. Adequate showing of fraud would allow rescission of the contract and further entitle Professional to punitive damages. *First American Title Ins. Co. v. Lawson*, 177 N.J. 125 (2003).[1] Under general principles of tort law, Professional would need to plead: (1) a material factual misrepresentation on the part of Kennedy; (2) made with knowledge or belief of its falsity; (3) with the intention that Professional rely thereon; (4) resulting in justifiable reliance to that party to his detriment. *See Agathos v. Starlite Motel*, 977 F.2d 1500, 1508 (3d Cir. 1992). Thus, under both the CFA and common law fraud, Professional would need to demonstrate some variant of deception or knowing misrepresentation on the part of Kennedy.

Along these lines, Professional's central assertion is that Kennedy materially misrepresented the method in which it calculates market values for approving loans, and that Kennedy never intended to close on the loan. (Proposed Am. Compl. 9-10.) In the proposed amended complaint, Professional asserts that Kennedy's CEO Greg Wolfer initially informed Professional that Kennedy would "loan Professional 60% of the *appraised value* of the property." (Proposed Am. Compl. 3-4.) According to Professional, Wolfer never informed Professional that, in fact, the loan would be based on the "as is market value" of the property, which is

---

[1] This Court will assume arguendo that entitlement to punitive damages in this case would confer subject matter jurisdiction upon this Court.

3

calculated differently than the appraised value. (*Id.* 4.) Professional then alleges Kennedy never explained how it would calculate the as is market value. (*Id.* 5-6.)

This Court finds, however, that Professional's own submission undermines these assertions. Even assuming Wolfer failed to state during the abovementioned conversation that Kennedy would use as is market value as opposed to appraisal value to calculate the loan,[2] the loan commitment itself made clear the method Kennedy would use. On page three of the April 12, 2004 loan commitment, which Professional attaches to the proposed amended complaint, Kennedy states, "[u]pon making a determination of value, KFI will deliver to Borrower a Loan Offer equal to Sixty Percent (60%) of the *as is market value* not to exceed the financing request" (emphasis added). In the same paragraph, the document defines market value as "a three (3) to four (4) month sale to a cash buyer." Nowhere in this document or any other document Professional has submitted for this Court's consideration does Kennedy purport to calculate the loan amount based directly on the appraisal value. Moreover, Professional admits that prior to its signing the loan commitment, it had become aware that the loan would be calculated on an as is value as opposed to an appraised value. (*Id.* 5.)

Finally, this Court finds compelling the fact that Kennedy in fact approved Professional for a loan in the amount of $1,458,000. Although this amount fell short of what Professional sought, Kennedy never guaranteed Professional the full $1,800,000. The mere fact that Kennedy extended this offer undermines Professional's allegation that Kennedy never intended to close on the loan.

Based on the record before it, this Court find that Professional has failed to allege misrepresentation, deception, or any other conduct by Kennedy that might support a claim of common law fraud or a violation of the CFA. As stated earlier, the contract was clear, unambiguous, and executed between two sophisticated commercial entities. It clearly contemplated a loan based on an as is market value and further laid out the definition of this term. This Court cannot conclude that Kennedy engaged in fraudulent or unlawful behavior.

**D. Breach of the Covenant of Good Faith and Fair Dealing**

The only other cause of action under which Professional has requested damages in excess of $75,000 is a breach of the covenant of good faith and fair dealing. (Proposed Am. Compl. 11.) Professional submits that Kennedy breached this duty by retaining an unskilled real estate evaluator and in ultimately failing to make the loan in the amount of $1,800,000. (*Id.*) For these alleged actions, Professional claims it has suffered damages in excess of $150,000. This Court finds this claim without merit.

First, nowhere in the complaint does Professional explicate how it suffered damages in excess of $150,000. The only time it details what damages it suffered, on page eight of the proposed amended complaint, it details a total amount of $75,000, inclusive of all fees, e.g., the commitment fee, legal fees, and appraisal fees. Second, Professional itself makes clear in its proposed amended complaint that any failure on the part of Professional to obtain the $1,800,000

---

[2] Although it is ultimately of no consequence, this Court fails to understand why, since these facts would have been known to Professional at the time of it filed the initial complaint, they were not alleged at that time.

4

loan did not turn on the initial appraiser Kennedy hired to evaluate the property.  Even assuming this initial appraiser significantly undervalued the property, the parties then jointly agreed to a third party appraiser who performed an independent evaluation of the property.  Nowhere in the complaint does Professional allege that Kennedy manipulated this second appraiser to undervalue the property or even that the appraiser did in fact undervalue the property.  Finally, this Court rejects the notion that Professional's failure to secure the full $1,800,000 sought amounts to a breach on the part of Kennedy, since this Court has already concluded that Kennedy was under no obligation to approve a loan in the exact amount of $1,800,000.

**E.  Conclusion**

In sum, Professional's proposed amended complaint fails to remedy the deficiencies found in the original complaint.  It has not sufficiently stated a case under the CJA or common law fraud nor has it alleged any other cause of action that would entitle it to recover in excess of $75,000.  As such, this Court finds to a legal certainty that Professional cannot recover in excess of the jurisdictional amount, and that this Court cannot assert subject matter jurisdiction over this matter.  For these reasons, Magistrate Hedges' decision is **AFFIRMED**.

SO ORDERED

**Dated:** December 30th, 2005              s/William J. Martini

_____

**William J. Martini, U.S.D.J.**